IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. 8:07CV492 |
| ) | |
| vs. ) | |
| ) | |
| $6,360.00 IN UNITED STATES ) | |
| CURRENCY, ) | MEMORANDUM AND |
| ) | ORDER |
| Defendant. ) | |
| ) | |
| RAY PATTERSON, Claimant. ) | |

By consent of the parties, this case came on for a bench trial on June 2, 2009. The government was represented by Assistant United States Attorney, Nancy Svoboda. The claimant, Ray Patterson, represented himself and appeared telephonically. The transcript of the trial (#42) was filed on June 14, 2009 at which time the case was deemed submitted.

**FINDINGS OF FACT**

Aaron Anderson testified that he is currently employed by the Omaha police department as an accident investigator for the traffic unit; however in June of 2007 he was assigned to the uniform patrol bureau in the Northwest precinct. On June 27, 2007 while working with his partner, Matthew Keenan, he participated in the arrest of the claimant, Ray Patterson.

Anderson stated that about 11 minutes past midnight he and Keenan were dispatched to 5060 Curtis Avenue for an alleged protection order violation where they met with a Mrs. Moss-Williams, the protected party in the protection order. She stated that her former boyfriend, Ray Patterson, was stalking her and had followed her around that evening. Moss-Williams told the officers that Patterson was driving a green Chrysler

Sebring with Nebraska plate Paul-Tom-Sam 195 (19:4-13).  After completing their report and not seeing a vehicle matching the description in the area, Anderson and Keenan left the area.

About two minutes later, the officers were called back to 5060 Curtis, at which time Moss-Williams advised them that Patterson had been out on the street and was currently up the street near 50th and Curtis in a silver vehicle.  Anderson went to the intersection of 50th and Curtis and located a silver Ford Taurus occupied by claimant Patterson and a female (20:12-18).

Patterson was placed under arrest for violation of a protection order and transported to 52nd and Nebraska Avenue where officers attempted to locate the earlier-described green Chrysler to confirm the story of the reporting party, Moss-Williams, and to validate whether Patterson had actually been driving a vehicle in the area of the alleged violation of the protection order (22:6-11).

Anderson testified that upon arriving at 52nd and Nebraska Avenue he found a green Chrysler Sebring with the Nebraska plate Paul-Tom-Sam 195 (22:12-15).  Anderson approached the driver's side of the vehicle, observed the front windows rolled down approximately an inch, and noticed the strong odor of marijuana coming from the vehicle (23:9-17).  Anderson observed that the vehicle's doors were locked so he returned to his cruiser and asked Patterson if he had the keys.  Anderson received the keys from Patterson and returned to the vehicle.

Anderson testified on cross-examination that the car contained a large amount of clothing and bottled water.  It appeared that Patterson had been living in the car or keeping a majority of his items in the vehicle.  Anderson searched the passenger compartment and

found approximately two ounces of marijuana in two separate baggies in the console. He found a digital scale, a box of plastic sandwich baggies, and a large amount of currency in the trunk[1] (24:11-23). The scale and the baggies were found on the left-hand side of the trunk about a foot away from the money. The scales, baggies, and cash were significant to Anderson because scales are used to weigh narcotics and baggies are used as packaging materials for trafficking marijuana (25:1-4). Anderson testified that the money,$6,360.00 mostly in 20's and 10's, was located in a 6-disc CD changer mounted in the trunk, which was consistent with drug trafficking (25:1-14). Anderson also located venue items associating Patterson with the vehicle–those items included an OPPD bill, as well as a receipt for a storage unit (26:3-7).

Matt Keenan testified that he is a 7½ year employee of the Omaha police department, currently serving in the traffic department. On June 27, 2007 he participated in the arrest of the claimant, Ray Patterson. The arrest occurred after Keenan and a fellow officer, Aaron Anderson, were dispatched to 5060 Curtis to investigate an alleged protection order violation. Upon their arrival they met the alleged victim, a Mrs. Moss-Williams, who stated that earlier in the evening she was driving home when she noticed the claimant, Ray Patterson, following her. After she pulled into her driveway she observed Patterson drive by approximately two minutes later (6:6-14). Moss advised the officers that Patterson was driving a silver Ford and was in the area of 50th and Curtis. Keenan and Anderson then went to 50th and Curtis and located a silver Ford with Patterson in the passenger seat (7:15-20). Keenan approached Patterson and asked him to step out

---

[1] No motion to suppress was filed by the claimant.

of the vehicle and also requested Patterson's identification.  He placed Patterson under arrest for the protection order violation (8:3-12).  Keenan and Patterson, then traveled to 52nd and Nebraska, where Anderson located and searched a green Chrysler Sebring associated with Patterson (9:9-17).  After Anderson finished the search, Patterson was taken to central police headquarters and booked.

On redirect examination, Keenan testified that when Patterson was arrested he had on his person $1,463.00 in cash (14:12-14).

While Patterson testified as to his claim, Exhibit 6 sets out a more complete summary of his position:

> Ray A. Patterson
> 3465 Fowler Circle
> Omaha, NE 68111
>
> Special Agent in Charge
> Federal Bureau of Investigation
> 10756 Burt Street
> Omaha, NE 68114
>
> ATTN: Forfeiture Paralegal Specialist
>
> Re:  Claimant:   Ray A. Patterson
>      Seizure #:  3600070118
>      Asset ID #: 07-fbi-003895
>      Property:   $7,823.00 U.S. Currency
>
> Dear Sir or Madame
>
> I received notice of the FBI's intent to seize $7,823.00 referenced above. Please note this letter as my claim of ownership of that money.
>
> On April 18, 2007, I surrendered myself on a warrant out of Douglas County, and posted $5,000.00 on April 4, 2007.  I have attached a copy of the receipt for that case.[2]  When that case was resolved on May 2, 2007, I received a

---

[2] Exhibit 3.

return of those proceeds in the amount of $4,500.00. I have also attached a copy of the check issued to me by Douglas County Court. I held onto that check for about a month, cashing it on May 22, 2007.[3] You will note that date on the canceled check. I kept the money in my possession in attempt to pay back a friend who had posted $2,500.00 of the bond money in the near future.

In the weeks to follow, I worked a couple of different side jobs as a laborer. I was often paid cash. One of those jobs was working for a man named Alan Hug. He paid me just over $1,500.00 approximately one week before June 27, 2007, when I was arrested and the above referenced cash was seized. I have attached a letter from Mr. Hug.

Also shortly before my arrest on June 27, 2007 a friend named Valerie Johnson, who is a close friend of mine, lent me $2,000.00, also intending to help me settle my debts. I have also have [sic] attached a letter from Ms. Johnson.[4]

On June 27, 2007, I was in the process of moving out of my residence, as my then girlfriend/roommate told me earlier that day that she had obtained a protection order[5] which was going to be served on me later. I have attached a copy of the protection order dated June 27, 2007. Because of the order and my plans to move out, I had all of my possessions (clothes, etc) and cash with me at the time of my arrest.

Because of the above stated facts, along with supporting documentation attached now and forthcoming, I believe that I can demonstrate that the currency seized above was my own lawfully earned cash, accrued and remaining over several weeks, and should be returned to me.

I, Ray A. Patterson, being duly sworn upon oath, under penalty of perjury, declare that the above facts are true.

---

[3] Exhibit 4.

[4] Exhibit 1 is the sworn statement of Valerie L. Johnson that on June 24, 2007, she loaned Ray A. Patterson $2,000 to help him pay off some debts.

[5] The complaining party in the June 27, 2007 Protection Order received as Exhibit 5 is one Rechelle Lewis, and the order directed Patterson to stay away from an apartment at 3516 N. 107 Pl. Patterson explained that he had been staying at that address; however, on June 26, 2007, the police came to the residence. Patterson had to call a ride, and his belongings were all put into the Chrysler Sebring. According to Patterson, there was a separate Protection Order involving Ms. Moss-Williams.

The exhibit bears a hand-written signature of Ray A. Patterson, notarized on the 27th day of September 2007.

## LAW

In the Verified Complaint for Forfeiture (Filing 1), the government alleges that "the defendant properties were used or were intended to be used to commit or facilitate the commission of violations of Title 21, United States Code, Sections 841 and 844" and are, therefore, subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6). Section 881(a)(6) authorizes the forfeiture to the United States of "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter."

The Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 983 (CAFRA), governs the burden of proof in this matter:

> (c) In a suit or action brought under any civil forfeiture statute for the civil forfeiture of any property–
>     (1) the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture;
>     (2) The Government may use evidence gathered after the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture; and
>     (3) if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense.

The term "facilitate" encompasses activity making the prohibited conduct less difficult or more or less free from obstruction or hindrance. *United States v. Real Property Located*

*at 3234 Washington Ave. North, Minneapolis, Minn.*, 480 F.3d 841, 843 (8th Cir. 2007) (quoting *United States v. Premises Known as 3639-2nd St., N.E., Mpls., Minn.*, 869 F.2d 1093, 1096 (8th Cir. 1989) (internal quotations omitted).

In this case, the government must establish by a preponderance of the evidence that the defendant currency was substantially connected to drug trafficking, as is required for civil forfeiture under 21 U.S.C. § 881(a)(6).  *See United States v. $117,920 in United States Currency*, 413 F.3d 826, 829 (8th Cir. 2005).

The government may use circumstantial evidence to establish its burden of proof. *See United States v. $84,615 in United States Currency*, 379 F.3d 496, 501 (8th Cir. 2004) (citing *United States v. $10,700 in United States Currency*, 258 F.3d 215, 224 n.6 (3d Cir. 2001)); *see also United States v. $117,920*, 413 F.3d at 829.  "In a forfeiture trial the government does not have to show evidence of, or trace the money to, a particular narcotics transaction."  *United States v. $150,660 in United States Currency*, 980 F.2d 1200, 1205 (8th Cir. 1992); *see also United States v. $10,700 in United States Currency*, 258 F.3d 215, 225 (3d Cir. 2001). The Eighth Circuit has often recognized that possession of a large amount of cash is strong evidence that the cash is connected with drug activity. *See, e.g., United States v. $84,615*, 379 F.3d at 501-502; *United States v. $117,920*, 413 F.3d at 829; *United States v. $124,700 in United States Currency*, 458 F.3d 822  (8th Cir. 2006).

If the government meets its burden, the claimants have the burden of proving by a preponderance of the evidence that (a) they have an ownership interest in all or a portion of the seized property, *United States  v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013

(8th Cir. 2003), and (b) they are "innocent owners" as defined under 18 U.S.C. § 983(d).[6]

## A. Substantial Connection

The claimant contends that the defendant currency was not connected to drug trafficking and has offered evidence that he received approximately $8,000.00 between May 22, 2007 and June 27, 2007 from legitimate sources: $4,500.00. from cashing the bond check on May 22, 2007; $1,500.00 in wages paid around June 20, 2007; and a $2,000.00 loan on about June 24, 2007.

The $1,463.00 found on the claimant's person at the time of his arrest was not seized.

The $6,360.00 seized on June 27, 2007 was mostly in denominations of 10 and 20 dollar bills and was hidden in a 6-disc CD changer in the trunk of Patterson's vehicle. The currency was in close proximity to a scale and a box of plastic baggies, items often used in trafficking marijuana. The officers also noticed a strong odor of marijuana coming from the vehicle's open windows, and found two baggies of marijuana in the console in the passenger compartment.

Considering these factors, the court finds that the government has established by a preponderance of the evidence that the defendant currency was substantially connected to drug trafficking.

---

[6] 18 U.S.C. 983(d)(1) provides, "An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence."

## B. Innocent Ownership Defense

Since the United States has met its burden in establishing a substantial connection between defendant currency and drug trafficking, the burden shifts to the claimant to refute the government's case by proving that he is an "innocent owner" of the property. *See United States v. 392 Lexington Parkway S.*, 386 F. Supp. 2d 1062, 1066-67 (D. Minn. 2005). The term "innocent owner" means an owner who did not know of the conduct giving rise to forfeiture, or, upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property. § 983(d)(2)(A)(i) & (ii). The term "owner" does not include "a person with only a general unsecured interest in, or claim against, the property or estate of another[.]" § 983(d)(6)(B)(i).

In this case, the claimant has argued that the defendant currency was not substantially connected to drug trafficking. He has not raised an innocent ownership defense.

## DECISION

The United States has proven by a preponderance of the evidence that all of the defendant property is substantially connected to drug trafficking. The claimant has not shown that he is an innocent owner of the property. Thus, the court finds that all the defendant property should be forfeited to the United States and judgment should be entered in favor of the United States and against the claimant.

A separate judgment will be entered pursuant to this Memorandum and Order.

The Clerk shall mail a copy of this Memorandum and Order, and a copy of the Judgment, to the Claimant at his last known address.

**IT IS SO ORDERED.**

**DATED August 28, 2009.**

         BY THE COURT:

         s/ F.A. Gossett
         **United States Magistrate Judge**